UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----

WILLIAM D. BRICE,

    Plaintiff,

v.

CALIFORNIA FACULTY ASSOCIATION,

    Defendant.

No. 2:18-cv-03106-MCE-EFB

**MEMORANDUM AND ORDER**

----

Through the present class action, Plaintiff William D. Brice ("Plaintiff") seeks to recover, on behalf of a putative state class of all former and current public employees represented by Defendant California Faculty Association ("CFA" or "Defendant'), union fees he claims were involuntarily collected to pay for collective bargaining activities in violation of the First Amendment of the United States Constitution. Presently before the Court is Defendant's Motion to Transfer Venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). For the following reasons, Defendant's Motion (ECF No. 16) is GRANTED.[1]

///

///

----

[1] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

**BACKGROUND**

Plaintiff has been a faculty member at the Dominguez Hills campus of the California State University ("CSU") since approximately August 1, 2014. Pl.'s Compl., ¶ 18. Defendant CFA is a labor organization providing exclusive representation to some 28,000 faculty employees at twenty-three CSU campuses located throughout the state. Decl. of Jessica Teepen, ECF No. 16-3, ¶ 3. The CFA is an affiliate of the California Teachers Association ("CTA").

Although Plaintiff resigned his membership with Defendant CFA and its affiliates around November of 2014, under California Government Code § 3583.5 Plaintiff was nonetheless required, as a nonmember, to pay CFA union fees as a condition of his employment with CSU. Those fees were automatically deducted from Plaintiff's wages without his consent and were transferred to CFA between December 1, 2014 and July 1, 2014. Pl.'s Compl., ¶¶ 21-22.

On June 27, 2018, the United States Supreme Court issued its decision in Janus v. AFSCME, Council 31, 138 S. Ct. 2448 (2018) (hereinafter "Janus"). Janus found the First Amendment is violated when a public sector union like CFA forces a government employee like Plaintiff to pay fees to a union as a condition of employment. Id. at 2486. Janus accordingly overturned prior precedent and held that the compulsory collection of "fair share" fees (to cover the cost of collective bargaining representation) from non-union members could not continue. Id. Although Plaintiff claims that following the Janus decision, CFA refunded $10.26 to Plaintiff (which represented the four days it charged Plaintiff for union fees between the day the case was decided and July 1, 2018), Plaintiff claims that CFA has not refunded any further fee it collected from Plaintiff prior to June 27, 2018. Pl.'s Compl, ¶ 25.

Plaintiff accordingly instituted the present lawsuit on November 30, 2018. He seeks to recover, on behalf of a class of all CSU employees who were represented by CFA but chose not to join CFA, all "fair share" fees received by the CFA before Janus

was decided. Plaintiff filed here in the Eastern District of California on grounds that CFA is headquartered in Sacramento, and that technically that entitles Plaintiff to a venue within the Eastern District under 28 U.S.C. § 1391. Plaintiff elected to file in the Eastern District despite the fact that he resides within the Central District of California, worked at a CSU campus within the Central District, and was represented by CFA through a field representative based in the Central District.

Defendant CFA now moves to transfer venue from this Court to the Central District on grounds that venue is also proper there, despite the fact that CFA happens to be headquartered here in the Eastern District. Defendant argues for transfer on grounds that the Central District is a more convenient forum for the litigants. In addition, because seven other cases also challenging non-member fees in the wake of Janus are already pending before a single Central District judge, CFA claims that interests of judicial economy also weigh in favor of transferring this matter. Plaintiff opposes, pointing out that his choice of venue should be accorded deference and that key CFA personnel involved in decisions on how to spend the subject non-member dues would have been employed at CFA headquarters in Sacramento.

## STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . 28 U.S.C. § 1404 (a). "The purpose of this rule is to 'prevent waste in time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).

Once the court determines that a case could have been brought before the proposed transferee court, it must consider a number of private and public factors relating to the interests of the parties and the judiciary. Those considerations include

(1) the plaintiff's choice of forum; (2) the respective parties' contacts with the forum; (3) contacts relating to the plaintiff's cause of action in the forum; (4) the cost of litigation in either forum; (5) the ease of access to sources of proof; (6) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (7) other facts that, in the interest of justice, impact the convenience or fairness of a particular venue. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

The burden is on the moving party to show that transfer is appropriate. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979) Whether to transfer an action is a decision soundly within the district court's discretion. See, e.g., Jones, 211 F.3d at 498. That discretion should be exercised based on an "individualized, case-by-case consideration of convenience and fairness." Van Dusen, 376 U.S. at 622.

## ANALYSIS

As Defendant CFA points out, it appears uncontroverted that this case could have been brought in the Central District because "a substantial part of the events or omissions giving rise to the claim occurred" within that District. 28 U.S.C. § 1391(b)(2). As to Plaintiff himself, he lives and works in the Central District, was represented on campus and through collective bargaining at a location within the Central District, and also suffered any harm resulting from his payment of mandatory fair share fees in the Central District. Consequently, Plaintiff's own experience clearly points to a venue there. See, e.g., Kalman v. Cortes, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009) (location where plaintiff suffered alleged First Amendment harm the most appropriate venue).

Even more importantly given the fact that Plaintiff professes to bring this matter as a class action, however, is the fact that a plurality of the putative class members encompassed by this lawsuit are also located within the Central District. Of the 28,000

CSU faculty represented by CFA at 23 campuses across the state, some 13,303 (or about 48 percent) are located in CSU's nine campuses located throughout the Central District, including the Dominguez Hills location where Plaintiff worked. See Decl. of Jacqueline Teepen, ECF No. 16-3, ¶¶ 3-4.[2] The percentage of Central District non-union "fair share" payers represented by the CFA prior to the June 2018 Janus decision, at 49 percent, is comparable to the overall figure above. Id. at ¶ 8.

According to Defendant, there consequently are more than twice as many "fair share" payers in the Central District as in any other District in California. Id.[3] Additionally, CFA itself has a substantial presence in the Central District, with six field staff representatives assigned to campuses within the Central District who perform their job duties primarily or exclusively there. Id. at ¶ 11. Moreover, as Defendant also points out, non-party witnesses are presumably located in the Central District since Plaintiff's employer, CSU Dominguez Hills, is located in Los Angeles, California, and because the Departments of Human Resources and Labor Relations for CSU, with whom CFA states it communicated regarding representation-related matters pertaining to CSU Dominguez Hills, employees are located in Long Beach, California. See Pl.'s Compl., ¶ 9; Teepen Decl., ¶ 9. For all these reasons, Defendant CFA maintains that the Central District is a more convenient forum for this litigation than the Eastern District.

Plaintiff, on the other hand, cites the general rule that his choice of forum is entitled to "substantial weight". Nadeau v. Wealth Counsel, LLC, No. 2:17-cv-00561-MCE-AC, 2018 WL 306163 at * 2 (E.D. Cal. Jan. 5, 2018) (quoting N. Acceptance Trust 1065 v. Gray, 423 F.2d 653, 654 (9th Cir. 1970). That deference is lessened, however, by the fact that Plaintiff has chosen to sue outside his "home forum" in the Central

---

[2] On the other hand, only 21 percent of employees represented by the CFA are located at CSU campuses in the Eastern District. Id. at ¶ 7.

[3] These figures are particularly important given the fact that Plaintiff purports to represent a state-wide class consisting of "all former and current public employees represented by CFA since November 30, 2016." Pl's Compl., ¶ 12. "In putative class actions, courts routinely consider the location and concentration of putative class members in deciding motions to transfer." Garlough v. Trader Joe's Co., No. 15-cv-01278-TEH, 2015 WL 4638340 at * 3 (N.D. Cal. Aug. 4, 2015).

District. Gemini Capital Group v. Yap Fishing Corp., 150 F.3d 1088, 1091 (9th Cir. 1998). Additionally, in class actions like this one, however, Plaintiff's choice of forum may be accorded "minimal consideration" if "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987).

Here, while Plaintiff contends that CFA spends non-member's "fair share" fees at its headquarters within the Eastern District, and presumably uses their offices in Sacramento to communicate with CSU representatives and state legislators, the Court has to wonder how much difference those issues make in a case where collection and use of fees from non-members was indisputably constitutional under state law and then-binding United States Supreme Court precedent prior to the Janus decision.[4] The fact that both the named plaintiff and a plurality (nearly a majority) of class members, along with pertinent CFA field representatives, are all located in the Central District is far more pertinent to a weighing of convenience than the fact that CFA's executive headquarters happened to be located in Sacramento.

Given all these considerations, this Court believes the convenience of the parties would best be served by litigating this matter in the Central District. This is the case despite the fact that the Eastern District arguably has some interest in the subject matter of the case given the fact that CFA's headquarters are here and a portion of the putative class members are also in the Eastern District. While the Court recognizes that a strong showing of inconvenience must be made in order to warrant upsetting the Plaintiff's choice of forum (See Nadeau, 2018 WL 306163 at * 1, quoting Hope v. Otis Elevator Co., 389 F. Supp. 2d 1235, 1243 (E.D. Cal. 2005)), the fact that Plaintiff may be able to

---

[4] Additionally, the fact that CFA headquarters happen to be located in Sacramento must be seen in context of the fact that the CFA engages in representational and advocacy activities throughout the state, with most of the employees it represents located outside the Eastern District. See Teepen Decl., ¶¶ 11-12. Because that means that the bulk of the alleged events and/or injuries underlying this matter occurred outside the Eastern District, the relatively minimal nexus occasioned by the location of CFA's headquarters here in Sacramento does not point towards continuing to maintain this matter in the Eastern District. See Lapachet v. California Forensic Medical Group, Inc., No. 16-cv-06959-HSG, 2017 WL 3917209 at * 3-4 (N.D. Cal. Sept. 17, 2017) (transferring venue to district where plaintiff's injuries occurred, notwithstanding the fact that plaintiff filed in district containing defendant's headquarters).

point to CFA's headquarters as at least some justification for retaining the case here in the Eastern District is nonetheless eclipsed once the Court looks to whether the interests of justice warrant a transfer.

Numerous courts have recognized that the most important determination in determining transfer under 28 U.S.C. § 1404 is whether the transfer would serve the interests of justice. See, e.g., Cohn v. Oppenheimerfunds, Inc., No. 09cv1656-WQH-BLM, 2009 WL 3818365 at *6 (S.D. Cal. Nov. 12, 2009) ("The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer . . . "). Particularly significant for purposes of this case is the fact that "the pendency of a related case in the transferee forum" is "[a]n important consideration in determining whether the interests of justice dictate a transfer of venue . . ." Am. Canine Found. v. Sun, No. 06-cv-0654 LKK/DAD, 2006 WL 2092614 at * 3 (E.D. Cal. July 27, 2006). "Litigation of related claims in the same tribunal is strongly favored because it . . . avoid[s] duplicitous litigation and inconsistent results." Puri v. Hearthside Food Solutions LLC, No. 11-cv-8675-JFW (SSx), 2001 WL 6257182 at *3 (C.D. Cal. 2011) (quoting Durham Prods., Inc. v. Sterling Film Portfolio, Ltd., Series A, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982).

Here, it appears that a total of seven related cases, all pending before Judge Staton in the Central District, turn on whether the CTA and its affiliates, including the CFA, must refund payments initially collected in accordance with California law and then-binding Supreme Court precedent before being invalidated by the Supreme Court's subsequent decision in Janus.  According to CFA, "transferring this case to the Central District would allow the same District Judge to consider all of these cases, and thereby avoid duplication of effort and potentially inconsistent rulings." Def.'s Mot., ECF No. 16-1, 8:14-16.

Plaintiff tries to distinguish the related matters in the Central District by claiming that while "the abstract legal question of union liability for pre-Janus deductions may be similar," the cases are nonetheless not comparable because "different unions,

7

employers, employees, and labor statutes are involved." Pl.'s Opp., ECF No. 24, 10:13-16. These differences are not dispositive, however, because the related cases, as well as this matter, share the common question of whether CTA affiliates that collected "fair share" fees pre-Janus can be held retrospectively liable for damages.

In Babb v. California Teachers Association, No. 8:18-cv-00994-JLS-DFM, for example, the plaintiffs seek to represent a class that includes all individuals "employed by the State of California or by any public school or school district located in the State of California" who were not members of CTA and "who were compelled by CTA and its affiliates to pay 'agency fees' or 'fair share service fees'" to CTA's affiliates. Decl. of Scott Kronlund, ECF No. 16-2, Ex. B., ¶ 25. Because the Babb case seeks both declaratory relief and retrospective monetary relief to recover all fair-share fees paid by non-members to CTA affiliates, the relief requested is the same as that sought by Plaintiff here. Moreover, in another case, Wilford v. National Education Association, No. 8:18-cv-01169-JLS-DFM, the plaintiffs also sought to represent a class of California teachers who paid union fair-share fees to the defendant unions, including CTA and eight local CTA affiliates. Kronland, Decl., Ex. C., ¶¶ 10, 13-16, 18-21, 31. Also like this case, the Wilford plaintiffs allege that the collection of such fees violates the First Amendment and California law, and seek both damages equal to all "fair share" fees paid to the defendant unions, as well as injunctive relief. Id. at ¶¶ 43, 50. The five other related cases appear similar.

The fact that these cases do not directly involve the CFA is of no moment, since CFA is an affiliate of the CTA and accordingly shares that status with the Central District cases. Indeed, according to the CFA, in at least two of the cases, the plaintiffs seek to certify putative defendant classes including <u>all</u> CTA affiliates, which means that the CFA could even arguably be made part of the defendant classes in those cases. See Def.'s Reply, ECF No. 26, 5:14-16. The fact that the classes may potentially overlap, particularly when combined with the shared fundamental issue of whether the collection of fair-share fees were permissible prior to Janus, all point to a clear risk of inconsistent

results if this case is not transferred to the Central District. Although the Court recognizes that the cases are not identical, any differences in the parties involved is inconsequential in the face of the underlying, and fundamental, legal question they all share. Having that same issue determined in different districts bears a clear risk of not just inconsistent rulings, but a wasteful duplication of effort. Accordingly, the Court finds that the interests of justice clearly militate in favor of a transfer in this instance.

Finally, the Court notes that given its status as one of the most congested dockets in the country (with an average caseload per judgeship of 1,302 in the Eastern District as of June 2018, as opposed to the Central District's 486 pending cases per judge as of the same date), engaging in duplicative work is not an empty concern. "[T]he relative congestion of the calendars of the potential transferee and transferor courts" is also properly considered in determining whether a transfer would serve the interests of justice. M & N Plastics, Inc. v. Sebelius, 997 F. Supp. 2d 19, 25 (D.D.C. 2013).

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Transfer Venue (ECF No. 16) is GRANTED;
2. The case is TRANSFERRED to the Central District of California;
3. The Clerk of this Court is directed to close the case once that transfer has been effectuated.

IT IS SO ORDERED.

Dated: May 8, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE